(No. 6510.   February 12, 1938.)

TWIN FALLS CANAL COMPANY, a Corporation, Appellant, v. RAYMOND J. HUFF and R. W. FARIS, Commissioner of Reclamation of the State of Idaho, Respondents.

[76 Pac. (2d) 923.]

588

James R. Bothwell and Harry Povey, for Appellant.

Richards & Haga and S. T. Hamilton, for Respondent, Raymond J. Huff.

GIVENS, J.—Respondent applied to the commissioner of reclamation of the state to appropriate 200 cubic feet per second of the public waters from Rock Creek, in Twin Falls county for power-pumping purposes. Notice of the application was duly published, and appellant filed a protest thereto and a hearing was had before the commissioner, who overruled the protest and approved the permit whereupon appellant appealed to the district court, whereupon respondent moved to dismiss the appeal on the grounds that chapter 145, Sess. Laws 1935, page 353, amending sections 41–202, 41–203 and 41–204, I. C. A., is unconstitutional in that: (1) It makes arbitrary and illegal classification of applications for the appropriation of water on which appeals will be permitted, in that only those applying for 25 second-feet of water or more must set forth their financial status. (2) Vests judicial power in the commissioner of reclamation. (3) Unduly restricts the introduction of evidence on appeal in the district court, thereby depriving parties of due process of law in violation of the state and federal constitutions. (4) Is ambiguous and attempts to regulate by special law the action of the courts of justice in violation of article 3, section 19, of the constitution of Idaho.

The court granted the motion and entered a judgment of dismissal, whence followed the appeal herein.

The 1935 amendments were substantially as follows: Only those (not all applicants as before) asking for more than

twenty-five second-feet of water or the development of more than five hundred theoretical horse-power to have to "state their financial resources," and "the means by which the fund necessary to construct the proposed works are to be provided and the estimated cost of construction." (2) Any party desiring to produce evidence before the commissioner to pay in advance the costs of taking such testimony and printing transcript thereof. (3) Discretion in the commissioner to appoint someone to investigate for him. (4) The time for filing protest shortened from 60 to 40 days and for hearing by applicant shortened to 60 days from issuance of notice of application, notice to be published within 10 instead of 21 days from date of service on him by the commissioner. (5) It eliminated from section 41–203 the words "for power purposes," and "be detrimental to domestic or irrigation uses," and added as grounds for the commissioner's refusing a permit; "that the water supply itself is insufficient for the purpose for which it is sought to be appropriated, or where it appears to the satisfaction of the department that such application is not made in good faith, is made for delay or speculative purposes, that the applicant has not sufficient financial resources with which to complete the work involved therein, or if a renewal permit, that such applicant has not proceeded diligently in applying the waters involved therein to any beneficial use or purpose. . . . . "

Respondent attacks only the last amendment and the one which requires the financial statement from any applicants for more than twenty-five second-foot or five hundred theoretical horse-power.

Appellant urges respondent cannot question the constitutionality of the amendments because he has not been injured thereby. Respondent's contention in this regard is that "one does not have to wait until he has been injured by an unconstitutional statute before challenging its provisions." "Respondent Huff has a permit granted by the commissioner of reclamation. Appellant seeks to have that permit annulled and to have the Court review respondent's right to receive that permit. The right thus asserted by appellant is claimed under the unconstitutional provisions of the statute. We

think it requires no argument to show that respondent may challenge the claim of appellant to an appeal under which he seeks to annul respondent's permit by a procedure that conflicts with the State and Federal constitutions, and violates rights guaranteed respondent by these documents.''

■■ If we eliminate the line of demarkation between those over and under twenty-five second-feet, etc., the requirement of showing financial responsibility previously applied to all applicants (sec. 41-202, I. C. A.), and, therefore, would have included respondent, because the law is clear that an unconstitutional amendment does not affect a previous statute, and the same remains undisturbed. (*Bissett v. Pioneer Irr. Dist.,* 21 Ida. 98, 101, 120 Pac. 461; *Lemhi County v. Boise Livestock Loan Co.,* 47 Ida. 712, 716, 278 Pac. 214; 59 C. J. 939, sec. 552; *Board of Education v. Hunter,* 48 Utah, 373, 159 Pac. 1019; *Ex parte Masters,* 126 Okl. 80, 258 Pac. 861; *Chicago M. & St. P. R. Co. v. Harmon,* 89 Mont. 1, 295 Pac. 762, 768.) It is therefore unnecessary to pass upon the question of whether the statute is unconstitutional in this particular because in either event there has been no injury or threatened injury by reason of the amendment, and the authorities are uniform to the effect that one not injured, or in immediate danger of injury because of the enforcement of a statute, cannot question its constitutionality. (*Williams v. Baldridge,* 48 Ida. 618, 626, 284 Pac. 203; *Washington Water Power Co. v. City of Coeur d'Alene,* 9 Fed. Supp. 263, 266; *In re Brainard,* 55 Ida. 153, 39 Pac. (2d) 769; *In re Allman,* 50 Ida. 223, 294 Pac. 528; *People v. Globe Grain & Milling Co.,* 211 Cal. 121, 294 Pac. 3, 5; *State v. Smiley,* 65 Kan. 240, 69 Pac. 199, 67 L. R. A. 903; Id., 196 U. S. 447, 25 Sup. Ct. 289, 49 L. ed. 546; *State v. Vettere,* 77 Mont. 66, 249 Pac. 666; *State v. Porter,* 88 Mont. 347, 294 Pac. 363; *Black v. Geissler,* 58 Okl. 335, 159 Pac. 1124; *McKinney v. State,* 3 Wyo. 719, 30 Pac. 293, 16 L. R. A. 710; *O'Neill v. Williams,* 127 Cal. App. 385, 15 Pac. (2d) 879; *Utah Mfrs. Assn. v. Stewart,* 82 Utah, 198, 23 Pac. (2d) 229; *Ex parte Durand,* 6 Cal. App. (2d) 69, 44 Pac. (2d) 367; *United States Building & Loan Assn. v. McClelland,* 95 Colo. 292, 36 Pac. (2d) 164; *Kansas Utilities Co. v. City of Burling-*

*ton,* 141 Kan. 926, 44 Pac. (2d) 233; *Pierson v. Hendrickson,* 98 Mont. 244, 38 Pac. (2d) 991; *Day v. Metropolitan Life Ins. Co.,* 11 Cal. App. (2d) 681, 54 Pac. (2d) 502; *State v. Alexander,* 87 Utah, 376, 49 Pac. (2d) 408; *State v. Kelsey,* 102 Mont. 8, 55 Pac. (2d) 685; *Powell v. McKelvey,* 56 Ida. 291, 53 Pac. (2d) 626; *State v. Greene,* (Mont.) 67 Pac. (2d) 995, 111 A. L. R. 770; *State v. Salter,* 190 Wash. 703, 70 Pac. (2d) 1056; *People v. Bowlin,* 19 Cal. App. (2d) 397, 65 Pac. (2d) 840; *State v. Case,* 182 Wash. 334, 47 Pac. (2d) 24.)

The restriction as to whom may give testimony before the district court on appeal from the rulings of the commissioner existed in the statute prior to the amendment of 1925, and respondent's motion to dismiss was directed only to the 1935 amendments. Furthermore there is nothing to indicate the trial court would not have construed the amendment as giving the commissioner the right to appear and give evidence in addition to that offered by the parties. In other words, that the 1929 amendment (Sess. Laws 1929, chap. 212, sec. 1; 41–203, I. C. A.) was an extension as to the admission of evidence and not a limitation. But respondent says he has suffered because the amendment gives added grounds for the rejection by the commissioner of a permit, and that such amendment confers judicial power upon the commissioner. In view of the fact that respondent's application was granted and the permit issued and that he has not shown any prejudice by the action of the commissioner in this regard, the assertion of injury is so tenuous as to be well-nigh negligible. However we need not quibble over this point because the *principle* involved was so clearly set at rest by this court in *Speer v. Stevenson,* 16 Ida. 707, 717, 102 Pac. 365, as to leave no ground for respondent's assertion:

" . . . . The act of March 11, 1909, provides a method of contesting a permit so issued, and this brings us to the first contention made by counsel for the petitioner, that this act attempts to confer judicial power upon the state engineer in violation of sec. 1, art. 2 of the constitution which reads as follows:

" 'The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.'

"And also sec. 2, art. 5:

" 'The judicial power of the state shall be vested in a court for the trials of impeachments, a supreme court, district courts, probate courts, courts of justices of the peace, and such other courts inferior to the supreme court as may be established by law for any incorporated city or town.'

"The inquiry, then, is: Does the act of March 11, 1909, give to the state engineer judicial power?

"If, under the constitution, the legislature may regulate the manner and means of appropriating the public waters of the state and give to the state engineer the power and authority to grant permits upon applications being made in proper form, we can see no reason why the legislature may not also vest the state engineer with power to cancel such permit when it is shown to him and he ascertains from personal examination that the permit has not been complied with. The granting as well as the cancellation and voiding of permits are acts of administration, and clearly within the power which may be given to the state engineer in supervising and administering the law regulating the appropriation of the public waters.

"While it is true the state engineer is called upon to exercise his judgment and decide whether the holder of the permit has complied with the law, this fact alone would not make his acts judicial. All administrative officers are called upon at times to exercise judgment and to decide questions, but when the judgment is exercised as a means of administering the law, the act is administrative rather than judicial. The contestant is required to file a petition setting forth the facts upon which he bases his plea for cancellation, stating wherein the holder of the permit, which it is sought to cancel, has failed to comply with the law and the permit. The relief

sought is the cancellation of the permit. No affirmative relief can be demanded or granted; the proceeding is informal. No provision is made for testing the sufficiency of the petition and no answer is required. Evidence is permitted to be presented by affidavit. The state engineer is authorized to make an examination, and in rendering his decision may be governed by the examination made. The procedure is entirely different and distinct from that prescribed for actions brought in the courts of the state. The petitioner is not required to allege or prove any injury to himself or his property, or any facts which would constitute an action at law or entitle the petitioner to relief in equity. The action does not result in the issuance of any writ or process known to the law for the purpose of preventing the invasion of the petitioner's right or to put the petitioner in the possession of any right.

"Under the statute the permit is granted upon application setting forth certain facts with proof by affidavit and aided by the examination of the state engineer. The power and duties of the engineer with reference to hearing the contest and canceling the permit are pure matters of administration. He is in no way authorized to decide or determine what rights, if any, the permit holder has acquired under the permit, or by virtue of any acts taken in connection with the construction of the works authorized by the permit, or the diversion or appropriation of water in connection therewith. Any party aggrieved by the decision of the engineer may appeal to the district court or commence an original action in said court for the determination of the questions involved in the proceeding before the state engineer. The only effect given by the statute to the acts and decision of the engineer is that any party aggrieved by said decision may, within ninety days from the date of the decision, either appeal to the district court or commence his original action."

As further supporting the holding that this statute does not confer judicial power on an administrative officer see annotation in 56 A. L. R. 283.

*Tulare Water Co. v. State Water Commission,* 187 Cal. 533, 202 Pac. 874, urged by respondent as sustaining his charge

that this provision authorizing the commissioner to determine whether there is any unappropriated water available, is unconstitutional, is distinguishable on several grounds. First, the statute there considered made no provision for appeal, whereas the statute herein does, and this court held in *Roberts v. Harrill,* 42 Ida. 555, 247 Pac. 451, there could be independent court action, and the California court considered this important, saying:

" . . . . Even if a hearing could be required, the commission is without jurisdiction to finally determine the existence or nonexistence of water subject to appropriation, and in such case its denial of an appropriation, if held to be a judicial determination of the right, would leave the petitioner without remedy, as no appeal is provided for, and *certiorari* would only go to the regularity of the proceeding, and not to the merits of the ruling."

Second: The court did not hold the statute unconstitutional but that the discretion therein granted should be reasonably exercised:

" . . . . It is fair to conclude that it was not intended to grant to the Commission in the matter of this preliminary permit to file upon unappropriated water more than a supervisorial discretion in the matter of granting such permits. At any rate, it is manifestly impracticable for the Water Commission to authoritatively determine that there is not water in a given stream subject to appropriation. . . . . To conclude the rights of would-be appropriators by the extrajudicial, and perhaps arbitrary, action of a board would be to deprive such applicant of a valuable property right without due process of law."

And this was the order entered:

"The judgment is reversed as to the proceeding for writ of mandate, with direction to the trial court to overrule the demurrer and hear the cause on the merits."

The "merits" therein meaning whether petitioners were entitled to their permit, and that is what should have been done in the case at bar.

*Tarpey v. McClure,* 190 Cal. 593, 213 Pac. 983, 987, considering the above case sustains our analysis of it:

"If, as claimed by respondents, this act attempts to vest in them arbitrary power and authority, or an uncontrolled and unguided discretion, in matters essential to the creation of the proposed district, it is, to that extent void. (cases) On the other hand, the Legislature may, without violating any rule or principle of the Constitution, confer upon an administrative officer a large measure of discretion, provided the exercise thereof is controlled and guided by rules prescribed therefor."

To the same effect see *Department of Public Works v. Superior Court*, 197 Cal. 215, 239 Pac. 1076; *Herminghaus v. Southern California Edison Co.*, 200 Cal. 81, 252 Pac. 607. Decisively settling respondent's contention is *Mojave River Irr. Dist. v. Superior Court*, 202 Cal. 717, 262 Pac. 724, 725, being followed by *Yuba River Power Co. v. Nevada Irr. Dist.*, 207 Cal. 521, 279 Pac. 128; Id., *Keck v. Superior Court*, 109 Cal. 251, 293 Pac. 128; *Wood v. Pendola*, 1 Cal. (2d) 435, 35 Pac. 526. Emphasizing the above conclusion in *East Bay M. Utility Dist. v. Department of Public Works*, 1 Cal. (2d) 476, 35 Pac. (2d) 1027, which in effect sustains the 1935 amendments herein. *Little Cottonwood Water Co. v. Kimball*, 76 Utah, 243, 289 Pac. 116, 118, cited by respondents did not hold the Utah statute unconstitutional but interpreted it to mean:

"These considerations support the conclusion that the only practical application of the statute quoted is to a case where it clearly appears that there is no unappropriated water in the proposed source. . . . . But if the question is fairly doubtful and there is reasonable probability that a portion of the waters are not necessary to supply existing rights the engineer should have the power to approve the application and afford the applicant the opportunity for an orderly recourse to the courts who have the facilities and powers to dispose of the matter definitely and satisfactorily."

and ordered the permit granted by the state engineer amended accordingly by the district court. This holding as applied to the case at bar would simply mean that the court should give the statute a liberal construction in favor of an applicant, which point we need not decide since the appeal is not here on its merits and respondent's application was granted.

*Bellingham Bay Improvement Co. v. City of New What-com*, 20 Wash. 53, 54 Pac. 774, held an act authorizing the city council to determine the regularity, validity, and correctness of an assessment, and providing for an appeal from its decision, not unconstitutional, as conferring judicial powers on the council. Thus being alined with the above cases supporting the statute herein.

Respondent asserts:

"As heretofore stated, all appeals from the commissioner of reclamation or the state engineer to the Court have been taken under what is now Section 41–217 or 41–210 or 41–306 or 41–308 of the statutes, which make adequate provisions for a full and complete trial *de novo* in the District Court. Section 41–306 provides that the party aggrieved may either appeal or commence an action in the District Court for the determination of the questions involved in the proceedings before the department, and Section 41–308 provides that the aggrieved party, if he does not appeal, may bring a suit in the nature of a suit to quiet title. These broad and ample provisions for hearings in Court were not carried forward into the Act of 1935, and the decisions of this Court under the old law have no application to the case now before the Court."

The last sentence is incorrect because sections 41–210, 41–217, 41–306 and 41–308 were not amended directly or by implication by chapter 145, 1935 Sess. Laws and the two added features of the amendments considered herein have not in the proceedings here injured respondent because he received his permit, no restriction has been applied to him and it is not shown the commissioner abused the valid discretion lodged in him and the trial court has made no ruling and given no section of any statute any interpretation adverse to him.

The argument that:

"His right to a determination of the question by a Court of competent jurisdiction is not remedied by the provision permitting him to appeal from the decision of the commissioner to the District Court, because the right of appeal is limited and restricted by the provision that the Court shall

hear and determine the matter by such evidence as may be adduced by the commissioner of reclamation.''

was not included in his motion to dismiss because, as stated above it was in the statute prior to the 1935 amendments, and this asserted violation of article 3, section 19, constitution is, therefore, not because of the 1935 amendments.

The only error complained of by appellant is that the court dismissed the action.

■■ Even if some provisions of the statute were unconstitutional the court should not have dismissed the action but proceeded under the prior valid statute and such portion of the amendments as could be held valid. While this point was not passed on directly in *Bissett v. Pioneer Irr. Dist., supra,* nevertheless the authoritative holding that a previous valid statute is unaffected by an invalid amendment because of its unconstitutionality supports this line of procedure. This is not an action for a declaratory judgment and the court will not pass upon questions of unconstitutionality until presented in a cause demanding rulings thereon.

*Reversed* and *remanded* with directions to the trial court to hear the case on its merits.

Costs to appellant.

Holden, C. J., and Morgan and Ailshie, JJ., concur.

Petition for rehearing denied.