475 P.2d 367

COUNTY OF ADA, a political subdivision of the State of Idaho, by the Board of County Commissioners of said County, Rulon Swensen, Jack M. Barney and John Bastida, and City of Boise City, a political subdivision of the State of Idaho by its Mayor, Jay S. Amyx and its council members, Sherman A. Perry, William Onweiler, Ralph F. Frazer, Anna Hettinger, Harold T. Jones and Elmo W. Orr, Plaintiffs-Respondents,

v.

**STATE of Idaho, Defendant-Appellant.**

No. 10557.

Supreme Court of Idaho.

Sept. 29, 1970.

Rehearing Denied Oct. 23, 1970.

Robert M. Robson, Atty. Gen., George C. Detweiler, Asst. Atty. Gen., Boise, for appellant.

Ellison M. Matthews, Pros. Atty., and James E. Risch, Chief Deputy Pros. Atty., for respondent County of Ada.

Elbert E. Gass, Boise City Atty., for respondent City of Boise.

McQUADE, Justice.

This action was commenced by Boise City and Ada County on June 5, 1969. The City and County seek to condemn a portion of property upon which the Old Soldiers' Home is situated, and which is now held as surplus property of the State. The City and County desire to acquire this property for an extension of Curtis Road from the first bench to Highway 44. The State in answering alleged that, by virtue of Session Laws 1963, ch. 228, sec. 6, at page 638, the State had not waived its sovereign immunity to be sued in eminent domain condemnation proceedings insofar as this particular land is concerned.

The State moved for summary judgment on the grounds that, because it had not waived its sovereign immunity and the suit was therefore barred, the district court did not have jurisdiction. On August 1, 1969, the district judge entered an order denying the State's motion for summary judgment. The City and County then moved for possession and use of the property to be taken by condemnation, and a hearing was had on this motion on September 9, 1969. The State again renewed its objection to the court's jurisdiction, and the district court, standing on its order of August 1, again rejected the State's contention. The new home has been completed and the City and County contend that, by virtue of the 1963 Session Laws, ch. 228, the property of the Old Soldiers' Home has been declared to be surplus and is no longer appropriated to

public use within the meaning of I.C. § 7–703(2). The State does not contest this point, and we will assume that the City and County are correct on this appeal.

On September 16, 1969, the district court entered two orders, one that the County and the City have the right of eminent domain by which to condemn the property of the State of Idaho involved in this action, and, the second, that the County and the City were entitled to take possession of the property as of the date of the orders. The State has appealed from the denial of its motion for summary judgment and from these last two orders. The only question presented on this appeal is whether or not the 1963 Session Laws, ch. 228, sec. 6 reserved the land which is the subject of this action from suit in a condemnation proceeding by virtue of the State's general right of sovereign immunity. The sentence in that section which the State contends reserved the Old Soldiers' Home property from condemnation is as follows:

"When the new facility is constructed and in use the present site of the Home is hereby declared surplus and will become the general property of the State of Idaho, *to be held for later disposition by the Legislature.*" (Emphasis supplied.)

It is by virtue of I.C. § 7–703 (2) [1] that the State has given its consent to be sued in condemnation proceedings in the jurisdiction of the district court.[2] It is the State's position that the sentence from the 1963 Session Laws, quoted above, effects a repeal of I.C. § 7–703(2) with respect to the particular property involved in this action. It is well established in this State that "repeal[s] by implication [are] not favored." [3] If this Court were readily to allow such inexplicit repeals of legislative enactments, the interpretation of our statutes, and the public's reliance thereon, would be thrown into confusion and uncertainty. Therefore, where earlier and later acts are not necessarily in conflict and may be reconciled by reasonable construction no repeal will result.[4] The question before us is, then, whether the withholding of a power of "disposition" of the Old Soldiers' Home property by the legislature is so irreconcilable with the State's general consent to be sued in a condemnation proceeding for eminent domain as to have, in effect, repealed that consent with respect to the Old Soldiers' Home property. We hold that it was not.

All parties and the district court agree that the word "disposition" as used in the 1963 Session Laws, ch. 228, is not a legal term of art, but connotes a commonly understood meaning of a voluntary act of managing, including conveying, property.[5] As the district court correctly pointed out, the power to hold property for future disposition is one usually accorded the owner of the property. A condemnation in eminent domain in normally a *taking* of property, or some right appurtenant to ownership thereof, *despite* the property owner's right to manage and convey his property as he sees fit. The power of eminent domain is, therefore, a limit on the rights of property owners to hold their property for

---

1. "7–703. *Private property subject to taking.*—The private property which may be taken under this chapter includes:

\* \* \* \* \*

"2. Lands belonging to the government of the United States, to this state, or to any county, incorporated city, or city and county, village or town, not appropriated to public use."

2. Petersen v. State, 87 Idaho 361, 393 P.2d 585 (1964) ; Hollister v. State, 9 Idaho 8, 71 P. 541 (1903).

3. *E. g.*, Golconda Lead Mines v. Neill, 82 Idaho 96, 101, 350 P.2d 221 (1960) ;

Idaho Wool Marketing Assn. v. Mays, 80 Idaho 365, 371, 330 P.2d 337 (1958) ; Storseth v. State, 72 Idaho 49, 51, 236 P.2d 1004 (1951).

4. *E. g.*, Golconda Lead Mines v. Neill, *supra* note 3; Idaho Wool Marketing Assn. v. Mays, *supra* note 3; Storseth v. State, *supra* note 3.

5. *See* Webester's Third New International Dictionary of the English Language Unabridged 654 (P. B. Gove ed. 1967) ; *see also* Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 338–339, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

future disposition. The term "disposition," and the concept it evokes, are not, therefore, irreconcilable with I.C. § 7–703(2)'s provision that State land not appropriated to public use may be subject to condemnation.

The State, however, argues that just as disposition is a word connoting a voluntary act, so does the word "consent" describe an act of the will. They then argue that, because the State cannot be sued without its consent, if the State allows itself to be deprived of property through the medium of a lawsuit, the State is thereby "disposing" of its property, even though the same could not be said of a private property owner in a like situation. This argument misconceives the effect of I.C. § 7–703(2). The effect of the "consent" given by that section was to render the State a private property owner for purposes of eminent domain condemnation actions. If the legislature had wished that the State not stand in that posture with respect to the Old Soldiers' Home property, it would have used clear and explicit language to achieve that end. Instead the word "disposition" was used, and, as we have indicated above, that term is in no way inconsistent with the usual posture of the State under I.C. § 7–703(2).

Because we have held that the legislature did not withhold the Old Soliders' Home property from eminent domain condemnation, we need not, and therefore will not, proceed to decide the constitutional questions raised by the parties.[6]

The judgment of the district court is affirmed.

DONALDSON, and SPEAR, JJ., and FELTON, D. J., concur.

SHEPARD, Justice (dissenting).

I feel required to file a dissent in this action. I agree with the majority decision to the extent that it holds that the State has waived its otherwise right of sovereign immunity. The majority opinion, however, and I think regretfully, becomes involved in an unnecessary exercise in semantics in its attempt to determine whether or not the property sought to be condemned herein is or is not appropriated to some public use. Section 7–703(3), I.C., makes it clear that property owned by the State and appropriated to a public use may nevertheless be condemned.

The majority opinion ignores certain alternatives that the legislature may have had in mind by its enactment of the Session Laws of 1963, Chapter 228, Section 6. I would point out that the legislature may have had in mind the future "disposition" of the Old Soldiers' Home property by declaring the same to be surplus and turning the property over to the State Board of Land Commissioners for sale to some private party or parties; or it may have had in mind the future "disposition" of the Old Soldiers' Home property to another state agency for some other public use which might or might not be more paramount and necessary than the use to which the property is sought to be put by plaintiffs herein. Of these facts we are not aware and can only speculate because the mandate of Section 7–703(3), I.C., was not complied with. That subsection provides:

" * * * but such property shall not be taken unless for a more necessary public use than that to which it has been already appropriated."

Rather than attempting to fathom the intent of the legislature, it would seem more appropriate and logical that the decision of the trial court be reversed and that the matter be remanded for the purpose of holding a hearing consistent with the purpose of Section 7–703(3). Such procedure would then permit a showing by the State as to the public use to which the land in question herein is to be put in the future. Thereafter, the trial court would determine, as required by the statute, which was the more necessary public use. Any other

6. *See* Hill v. Schultz, 71 Idaho 145, 149, 227 P.2d 586 (1951); Twin Falls Canal Co. v. Huff, 58 Idaho 587, 599, 76 P.2d 923 (1938).

procedure would permit a condemning authority to acquire any state property temporarily vacant and unused. I cannot believe that such is the intent of the majority opinion; however, I think such would be the ultimate result therefrom.

The majority opinion unfortunately equates "not appropriated to some public use" to private property. I must continue to believe that all property held by the State for whatever purpose is public property in so long as title thereto is held by the State. If the use to which it is put or intended to be put is not higher than the use for which sought by the condemning authority, then it must of course be subject to condemnation. Without, however, that specific determination being made by a trial court, it is impossible for me to perceive how this Court is able to determine the ultimate question, which is of course, can this particular piece of property be condemned?