509 P.2d 1301

The STATE of Idaho ex rel. the IDAHO STATE PARK BOARD, consisting of Wilhelm M. Beckert et al., Plaintiff-Appellant,

v.

CITY OF BOISE, Idaho, a political subdivision of the State of Idaho, By and Through its Mayor, Jay S. AMYX, and its Council Members, et al., and County of Ada, a political subdivision of the State of Idaho, by the Board of County Commissioners, consisting of Rulon Swensen, et al., Defendants-Respondents.

No. 11059.

Supreme Court of Idaho.

May 7, 1973.

Rehearing Denied May 31, 1973.

W. Anthony Park, Atty. Gen., Donald E. Knickrehm, Asst. Atty. Gen., Boise, for plaintiff-appellant.

Elbert E. Gass, James E. Risch, Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a summary judgment granted in favor of Boise City and Ada County on the basis that legislation creating the Idaho Veterans' Memorial Park violates the constitutional prohibition against local or special laws. The sole issue on this appeal is the constitutionality of the legislation in question.

This case marks another in the protracted series of legal battles between the State of Idaho on the one side and Boise City and Ada County on the other. The dispute focuses on a piece of property located in Boise, Idaho known as the Old Soldiers' Home. For many years this property was operated by the State as a home for veterans. The State constructed a new veterans' home and the legislature declared the property at issue herein to be surplus, the general property of the State and held for later disposition by the legislature. 1963 S.L. Ch. 228.

In 1969 the City and County brought an action to condemn a portion of the Old Soldiers' Home property for the construction of Curtis Road from the first bench in Boise to State Highway 44. That condemnation action was successful and the judgment was affirmed in County of Ada v. State, 93 Idaho 830, 475 P.2d 367 (1970). The validity of that condemnation is not at issue herein.

Thereafter the 1971 session of the Idaho legislature enacted Chapter 125 of the 1971

Session Laws which provides in pertinent part:

"*Section* 1. There is hereby created a state park to be known and designated as the Idaho Veterans Memorial Park, located in Ada County and particularly described as follows:

\* \* \* \* \* \*

[Metes and bounds description omitted]

\* \* \* \* \* \*

"*Except* ditches, laterals, and public roads. *Also Excepting* Boise Central Railway Co. Right-of-Way, as disclosed in deed recorded in Book 26 of Deeds at page 139, records of Ada County, Idaho.

"*Section 2*. From and after the effective date of this act, control, management and administration of the Idaho Veterans Memorial Park shall be vested in the Idaho state parks board. The Idaho Veterans Memorial Park shall be maintained as a state park for the use of all the people, and no part, parcel or interest therein shall be alienated without the consent of the legislature.

"*Section 3*. The legislature hereby declares that the highest and best use of the property described in section 1 of this act is as a state park. The Idaho state parks board may, in its sound discretion, exercise the power of eminent domain to condemn any uses or interests in said property which are or may be inconsistent with the purposes of this act.

"*Section 4*. An emergency existing therefor, which emergency is hereby declared to exist, this act shall be in full force and effect on and after its passage and approval."

In May, 1971 the State of Idaho ex rel. the Idaho State Park Board brought the present action under the purported authority of Chapter 125, 1971 Idaho S.L. seeking to recondemn and thus reacquire the property which the City and County had previously acquired in the 1969 condemnation action. The court below entered summary judgment in favor of the City and the

**382**

County on the basis that, as a matter of law, Ch. 125, 1971 Idaho Session Laws violated both art. 3, § 19, par. 7 and art. 9, § 7 of the Idaho Constitution. The State appeals from the summary judgment in favor of the City and County. The sole issue for determination herein is the constitutionality of said Chapter 125.

At the outset, we state the long-standing rules of statutory construction:

"(1) In determining the constitutionality of a legislative enactment, fundamental principles must ever be kept in mind and rigidly observed. Statutes are presumed valid and all reasonable doubts as to constitutionality must be resolved in favor of validity. (2) When a statute is susceptible to two constructions, one of which would render it invalid and the other would render it valid, the construction which sustains the statute must be adopted by the courts. (3) The burden of showing unconstitutionality of a statute is upon the party who asserts it and invalidity must be clearly shown. (4) It is the duty of the courts to uphold the constitutionality of legislative enactments when that can be done by reasonable construction. (5) Unlike the federal constitution, the state constitution is a limitation, not a grant, of power. We look to the state constitution not to determine what the legislature may do, but to determine what it may not do. If an act of the legislature is not forbidden by the state or federal constitutions, it must be held valid. Eberle v. Neilson, 78 Idaho 572, 306 P.2d 1083 (1957); Idaho Telephone Company v. Baird, 91 Idaho 425, 423 P.2d 337 (1967)." Leonardson v. Moon, 92 Idaho 796, 806, 451 P.2d 542, 552 (1969). See, Sutherland, 2 Statutory Construction § 4509, pp. 326–327 (1943).

Idaho Constitution, art. 3, § 19, par. 7, provides in pertinent part:

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:—

\* \* \* \* \* \*

"Authorizing the laying out, opening, altering, maintaining, working on, or vacating roads, highways, streets, alleys, town plats, parks, cemeteries, or any public grounds not owned by the state."

This constitutional provision was considered in Butler v. City of Lewiston, 11 Idaho 393, 398, 83 P. 234, 235 (1905), and the court stated:

"The provisions of said section 19, article 3, is a prohibition upon legislative power as to all matters enumerated in said section, and prohibits the enactment of local or special laws on the subjects therein enumerated. This section differs from a similar section in other state Constitutions in some particulars. In the former named Constitutions is found a provision prohibiting special laws where general laws can be made applicable. In our own Constitution local and special laws are prohibited in regard to the matters therein specifically mentioned. The prevailing spirit of most of the state Constitutions is opposed to special legislation. *However, such spirit is not prohibitory of all special legislation,* but only of such as relate to certain specified subjects and to such other cases as general laws can be made applicable. Under the provisions of our Constitution the *Legislature is master of its own discretion in passing special laws on subjects not prohibited by the Constitution,* \* \* \*." (Emphasis supplied.)

It is clear under *Butler* that our Constitution prohibits special legislation only if such legislation comes within one of the thirty-two expressly prohibited categories. Put conversely, the legislature *may* pass any special legislation not specifically forbidden by the Constitution. Many of our sister states have similar but not identical constitutional provisions. *See:* Sutherland, 2 Statutory Construction, § 2101, pp. 2–5 (1943); Cloe and Marcus, Special and Local Legislation, 24 Ky.L.J. 351, 352 (1936).

It is apparent that art. 3, § 19, par. 7 of our Constitution is premised on the policy

that the legislature should not be allowed to carry out special projects on lands " * * * not owned by the state." The constitutional debate preceding the adoption of our Constitution demonstrates that policy:

"Mr. MORGAN. I do not think the amendment should be adopted. One of the objects of this section is to prevent different parts of the state, or persons interested in different parts of the state, from going to the legislature and lobbying through bills for the purpose of appropriating money for laying out, altering or changing roads in different parts of the territory. There is a continual pulling at the legislature to get them to appropriate money to those purposes. The legislature might appropriate money generally for the construction of roads throughout the territory but to appropriate money for the construction of particular roads in particular parts of the territory,—I do not think it is a good plan, and therefore I am opposed to the amendment." 1 Proceedings and Debates of the Constitutional Convention of Idaho, 1889, p. 539 (Hart ed. 1912).

Although the above quoted language is couched in specific terms of "roads" it is clear that the reasoning therein is applicable also to "parks." The Constitution is designed to prevent legislation bestowing special favors on preferred groups or localities and such prohibition is no less applicable to parks than it is to roads. It is equally clear that the phrase "not owned by the state" refers to and modifies all of the preceding nouns, i. e., roads, highways, streets, alleys, town plats, parks, cemeteries or public grounds. Any other construction of the constitutional language would be patently absurd and would defeat the constitutional intent as delineated by the proceedings and debates of the constitutional convention.

 We therefore hold that art. 3, sec. 19, par. 7, does not prohibit the legislature from establishing state parks on lands *owned by the state*. We further conclude that

Idaho Session Laws 1971, Ch. 125, while in fact special legislation, does not come within those categories of special legislation specifically prohibited by Idaho Constitution, art. 3, § 19, par. 7. *See*: Town of Greenwood Village v. District Court, 138 Colo. 283, 332 P.2d 210 (1958).

As a second basis for his decision, the trial court held that Ch. 125 violated art. 9, sec. 7 of the Idaho Constitution, that portion of our Constitution provides:

"The governor, superintendent of public instruction, secretary of state, attorney-general and state auditor shall constitute the state board of land commissioners, who shall have the direction, control and disposition of the public lands of the state, under such regulations as may be prescribed by law."

The trial court concluded that Ch. 125, 1971 S.L. usurped the power of the State Board of Land Commissioners to exercise control and disposition of the public lands of the state.

The State suggests that the City and County have no standing to advance such a claim of unconstitutionality and further that the City and County can state no justiciable question. While such assertion by the State is somewhat novel in view of the fact that the State brought the action against the County and City under the purported authority of said Ch. 125, resolution of this issue is not necessary.

 The record before us indicates that on April 13, 1971, more than six months prior to the decision of the trial court, the State Board of Land Commissioners transferred the Old Soldiers' Home property to the State Parks Board. Although the County and City categorized such action by the land commissioners as "submitted to legislative whim," the motive and authority of the land commissioners are not before us. Regardless of the reasons or motivation of the land commissioners, their transfer of the said property to the State Parks Board moots the issue of whether said Ch. 125 violated Idaho Constitution art. 9, sec. 7. This court has

consistently ruled that an appeal will be dismissed where only a moot question is involved. Tryon v. Baker, 94 Idaho 222, 485 P.2d 964 (1971); McCandless v. Kramer, 76 Idaho 516, 286 P.2d 334 (1955). Logic and reason dictate therefrom that this court need not consider a moot issue on appeal even though it may retain jurisdiction of the case to consider other issues which remain viable and not moot.

The memorandum decision and order granting summary judgment are clear and precise. They indicate that the trial court reached its decision to render summary judgment solely on the unconstitutionality of Ch. 125, S.L. 1971. Nevertheless in their brief on appeal the City and County argue additional points not decided by the court below. They suggest that Ch. 125, S.L. 1971 authorized only condemnation of the property specifically described therein. A careful examination of Ch. 125 discloses a metes and bounds description of certain property from which there is *excepted* "ditches, laterals and public roads." The trial court has not determined whether in fact the property sought to be condemned is included within the metes and bounds description of the property described in Ch. 125. Further, if the property sought to be condemned is a "public road" which is excepted from the metes and bounds description then there may well be serious question whether Ch. 125 authorizes the State to condemn the property sought herein. The City and County further argue that the legislature had no authority to declare the highest and best use of the property sought to be condemned was and is as a state park. We express no opinion as to any of the above matters since the court below has had no opportunity to pass upon them. Further there is the distinct probability that evidence will need to be taken to resolve such issues.

Judgment of the trial court is hereby reversed and remanded for further proceedings consistent with the views expressed in this opinion. Costs to appellants.

DONALDSON, C. J., and McFADDEN, J., concur.

BAKES, Justice (dissenting):

I agree with the law as set out in the majority opinion. However, applying that law to the facts as set out in the plaintiff's complaint, the trial judge was correct in granting the motion for summary judgment.

Two statements made in the majority opinion are determinative of this case. They are as follows:

"It is apparent that art. 3, § 19, par. 7, of our Constitution is premised on the policy that the legislature should not be allowed to carry out special projects on lands ' * * * not owned by the state.'

. . . . . .

"We therefore hold that art. 3, § 19, par. 7, does not prohibit the legislature from establishing state parks on lands *owned by the state."* (Majority opinion, p. 1304).

The fact that the plaintiff State of Idaho is seeking to condemn the lands in question from the defendant is an admission that the state does not own the lands and therefore they must acquire them by condemnation. Therefore, if Chapter 125 of the 1971 Session Laws does grant power to the state to condemn the land in question, it is authorizing the condemnation of land not owned by the state, and therefore the statute comes within the prohibition of Article 3, § 19, paragraph 7.

The plaintiff's complaint specifically points out that the land in question was originally owned by the state, and was condemned by Boise City and the County of Ada for public use, namely for the extension of Curtis Road. Plaintiffs by their complaint are seeking to re-condemn the exact same land which was condemned initially by the defendants from the state in Civil Action No. 42500 in the Fourth Judicial District Court. See our previous decision in County of Ada and Boise City, plaintiffs, v. State of Idaho, defendant, 93 Idaho 830, 475 P.2d 367 (1970). Since the land is now held by the defendants, Boise City and Ada County, as a "public use," i. e., extension of Curtis Road, it is, in my opinion, a "public road" within the meaning

of Chapter 125 of the 1971 Session Laws. In defining the property with which the act purported to create the Idaho Veterans Memorial Park, there was specifically omitted from the description of the park the following:

"Except ditches, laterals, public roads."

As a result of the initial condemnation action in Civil No. 42500, the property became the right of way for the Curtis Road extension, and thus a "public road." On the face of the complaint the plaintiffs have shown that the particular property proposed to be condemned by the state is specifically exempted from the legal description of the Idaho Veterans Memorial Park, and therefore Chapter 125 of the 1971 Session Laws does not even apply to the property which was previously condemned by the defendants in Civil No. 42500, Fourth Judicial District Court, County of Ada, in which the defendant and Boise City originally acquired the road right of way in question.

Therefore, based upon the facts set out on the plaintiff's complaint, the defendants were entitled to a motion to dismiss the complaint for failure to state a cause of action because (1) the lands sought to be condemned were excluded from Chapter 125 of the 1971 Session Laws because they constitute a "public road;" and (2) if they were not, the complaint purports to condemn land not owned by the state and therefore was special legislation in violation of Article 3, § 19, paragraph 7, Idaho Constitution.

The majority opinion acknowledges this analysis in view of the statement on page 1305:

"The trial court has not determined whether in fact the property sought to be condemned is included within the metes and bounds description of the property described in Ch. 125. Further, if the property sought to be condemned is a 'public road' which is excepted from the metes and bounds description then there may well be serious question whether Ch. 125 authorizes the State to condemn the property sought herein."

There are no facts to be resolved in view of the manner in which plaintiff has pleaded its cause of action, and if there is any question over the meaning of "public roads" as used in Chapter 125 of the 1971 Session Laws, this Court must make the final determination of what those words "public roads" mean.

There is no reason to remand this matter to the trial court. The motion for summary judgment should be affirmed.

McQUADE, J., concurs.