576 P.2d 581

**FIRST AMERICAN TITLE COMPANY OF IDAHO, INC., an Idaho Corporation, Plaintiff-Respondent,**

v.

**J. L. "Mike" CLARK, Assessor of Ada County, Idaho, and Marjorie Jonasson, Treasurer of Ada County, Idaho, Defendants-Appellants.**

**LAND TITLE AND ESCROW, INC., a corporation, Plaintiff-Appellant,**

v.

**CASSIA COUNTY, a body corporate, Shirley Povlsen, Cassia County Treasurer, Calvin Heiner, Cassia County Assessor, Defendants-Respondents.**

**Nos. 12244 and 12670.**

Supreme Court of Idaho.

March 24, 1978.

Jim C. Harris, Chief Civil Deputy Pros. Atty., Boise, for defendants-appellants.

Robert E. Smylie, of Langroise, Sullivan & Smylie, Boise, for plaintiff-respondent.

Wayne L. Kidwell, Atty. Gen., and Theodore V. Spangler, Jr., Deputy Atty. Gen., State Tax Commission, on oral argument, Boise, amicus curiae.

William A. Parsons, of Parsons & Smith, Burley, for plaintiff-appellant.

Alfred E. Barrus, Pros. Atty. of Cassia County, and Stephen A. Bywater, Deputy Pros. Atty., Burley, for defendants-respondents. Mr. Bywater argued.

BISTLINE, Justice.

The facts of these cases are not in dispute. First American Title Company of Idaho, Inc. ("First American of Idaho"), is an abstract title company incorporated ·in Idaho. It issues title insurance policies as the authorized agent and wholly owned subsidiary of First American Title Insurance Company, Inc., a national insurance company authorized to write title insurance policies in the State of Idaho. As an "insurer," the national company pays the Idaho Director of Insurance a premium tax upon the insurance it writes. As an "agent," First American of Idaho does not. Land Title and Escrow, Inc. ("Land Title"), so far as pertinent to this case, stands in much the same relationship as agent of the national insurer, Lawyers Title Company of Richmond, Virginia.

Both First American of Idaho and Land Title own extensive "title plants," consisting of tract indexes, abstract records and other materials necessary in the business. These title plants are continuously updated with all relevant documents filed in the counties where the companies write title insurance or issue opinions on abstracts. It is apparent from the record that in the past, title plants of abstract title companies were not generally taxed by local (county) taxing authorities. On November 5, 1974, however, the Idaho State Tax Commission, following a favorable decision in Fourth Judicial District Court, notified the county assessors throughout the State that "this property should be assessed as other personal property and included on your subsequent roll for 1974."

First American of Idaho brought its action, Case No. 12244, seeking an order permanently enjoining the Ada County Assessor from assessing its personal property and the Ada County Treasurer from collecting *ad valorem* taxes thereon. The parties submitted the issue on a stipulation of facts. In a memorandum opinion filed on April 2, 1976, Judge Schroeder ruled that the county was not empowered to levy a tax on First American's title plant. A permanent injunction issued, from which final decision Ada County appeals.

Land Title and Escrow, Inc., in Case No. 12670, brought suit against Cassia County, its assessor and treasurer, challenging both the authority of the county to impose the taxes and the manner in which they had been assessed.[1] In an order filed on May 11, 1977, Judge Bellwood held that the county was entitled to summary judgment. Land Title appeals.

We have consolidated these two cases because they present but one question for appeal: Does I.C. § 41–405 preclude local governments from assessing and collecting ad valorem personal property taxes on title plants owned by the Idaho agents of national title insurance companies? We hold that such taxes have been pre-empted by the State taxing authority and may not be assessed and collected by county governments. We therefore affirm the decision of Judge Schroeder in Case No. 12244 and reverse that of Judge Bellwood in Case No. 12670.

I.C. § 41–405(2), the section which controls the present case, was enacted by the Idaho legislature in 1961. It reads as follows:

> (2) The state of Idaho hereby preempts the field of imposing excise, privilege, franchise, income, license, permit, registration, and similar taxes, licenses and fees upon insurers and their agents and other representatives as such; and no county, city, municipality, district, or other political subdivision or agency in this state shall levy upon insurers, or upon their agents and representatives as such, any such tax, license or fee; nor shall any such county, city, municipality, district, political subdivision or agency require of any such insurer, agent or representative, duly authorized or licensed as such under this code, any additional authorization, license, or permit of any kind for conducting therein transactions otherwise

lawful under the authority of license granted under this code. (Emphasis added.)

Judge Bellwood observed that the above language "is a classic example of poor legislation for the courts to work with." He then reasoned that because I.C. § 41–405(2) is silent with regard to ad valorem personal property taxes and because such taxes are not "similar" to those expressly pre-empted by the State, the statute did not bar the imposition of such taxes by the county. His interpretation is not an unreasonable one, given the language of I.C. § 41–405(2). Taken in its wider context, however, we accept the opposite reading given the statute by Judge Schroeder.

Statutes must be construed as a whole, without separating one provision from another. Boise Payette Lumber Co. v. Challis, 46 Idaho 403, 216 P. 26 (1928). The 1961 amendment, which now stands as I.C. § 41–405(2), must therefore be read against the background of the already existing exemption from personal property taxes on the part of insurers. Such an exemption is expressly provided for in I.C. § 41–405(1):

> 41–405. Premium tax in lieu of other taxes—Local taxes prohibited.—(1) Payment to the director by an insurer of the tax upon its premiums as in this chapter required, shall be in lieu of all other taxes upon premiums, taxes upon income, franchise or other taxes measured by income, and upon the personal property of the insurer and the shares of stock or assets thereof; provided, that all real property, if any, of the insurer shall be listed, assessed and taxed the same as real property of like character of individuals. (Emphasis supplied.)

In Security Abstract & Title Co. v. Leonardson, 74 Idaho 528, 264 P.2d 1027 (1953), similar language in the predecessor statute had been interpreted by this Court as pre-

---

1. The tax in Cassia County was arrived at by multiplying the total number of documents registered in the county courthouse (more precisely, by the percentage of the total which is found to be of interest to title companies—here estimated at a conservative 37.6%) by 20 cents (the cost of each document). Land Title chal-

lenged the results of this method of valuation but that issue is not before us on appeal. The parties have stipulated and the court has ordered that that issue has been dismissed without prejudice to a later challenge in the event this Court rules that the county has the authority to impose the tax.

cluding local governments from imposing on *insurers* the identical *ad valorem* personal property taxes now sought to be imposed on the local *agents*. The Legislature must be presumed to have known that this was the law under the existing statute and its interpretation by this Court. *Mundell v. Swedlund*, 58 Idaho 209, 71 P.2d 434 (1937). It seems clear, therefore, that the legislative purpose in passing the 1961 amendment was to extend the full protection of state pre-emption from "insurers" to "their agents and other representatives as such."

Our conclusion is bolstered by several considerations. In the first place, the statute appears in Title 41 which is a comprehensive treatment of the law pertaining to title insurance companies and their agents. Throughout this Title, the insurers and their agents are repeatedly treated as a unit in such crucial particulars as the rates which may be charged, the escrow fees and the proportionate distribution of the collected premiums. I.C. § 41–2706 to 2708. Even more clearly, the Title provides that this industry is to be regulated at the *State* level. In the *Security Abstract* case, we found it significant that the county could point to no specific statutory authorization for its imposition of taxes on the title insurance company:

> Unless we apply the general provisions relative to the taxing of all personal property, there is no provision which provides for an ad valorem tax against appellant's property. 74 Idaho at 531, 264 P.2d at 1029.

Here, too, the counties rely only upon the general taxing provisions found in I.C. § 63–101 and 109. Such reliance can not stand in face of the specific pre-emption spelled out in I.C. § 41–405(2) and in the context of an industry which is as pervasively, explicitly and centrally regulated as that of title insurance.

 Furthermore, the familiar rules of statutory interpretation require that this

Court give *some* meaning to the 1961 amendment and that the amendment be construed so as to add to previously existing law. *Futura Corp. v. Id. State Tax Comm'n*, 92 Idaho 288, 442 P.2d 174 (1968). If we were to interpret I.C. § 41–405(2) as suggested by the counties and the State Tax Commission, then we would make a nullity of the 1961 amendment. County taxing authorities, after all, can *only* impose *ad valorem* property taxes. This Court so held in 1923 in *State v. Nelson*, 36 Idaho 713, 213 P. 358, and that holding has not been challenged. If the 1961 amendment is not held to extend to the only taxes a county can impose, then it is no extension at all and becomes meaningless.[2]

 In sum, I.C. § 41–405(2) must be read strictly since it purports to be a pre-emption statute. Its extension of pre-emption protection to "agents and other representatives" must be read against a background of statutory and case law which had firmly established the fact that the insurers themselves were exempt from *ad valorem* personal property taxes on their books, records and abstracts. It must be read in the context of a comprehensive statutory framework which centralizes all regulation of the title insurance industry in the State. And, above all, it must be read so as to have *some* meaning. Such meaning can be found as follows: I.C. § 41–405(2) pre-empts the field of license fees, privilege and excise taxes and all "similar taxes," that is to say, those which tax a company's right to engage in the title insurance business. But I.C. § 41–2708 makes ownership of tract indexes and abstract records (the heart of the company's "title plant") a condition precedent to entry into the title insurance business. It follows that the tax which the counties here seek to impose upon the local agent's title plant is, in reality, a tax upon the company's privilege of engaging in the title insurance business. We hold, there-

2. The State Tax Commission, in its brief before the Court, candidly admits that its reading would render I.C. § 41–405(2) virtually content-less. It suggests that perhaps the legislature's intention in enacting the 1961 amendment was

"to protect the insurer's agents from the imposition of local excise, privilege and license taxes *in the event of any future change in the law*." We cannot impute to a legislative enactment so nugatory a function.

**14**

fore, that such taxation has been pre-empted by I.C. § 41–405(2).[3]

The title companies argue, in the alternative, that if we construe I.C. § 41–405(2) so as to permit counties to levy *ad valorem* personal property taxes against their books, records and abstracts, then the statute should be declared unconstitutional. They argue that such a construction would discriminate against locally owned title plants as opposed to plants owned by out-of-state companies; between title plants owned by agents as opposed to those owned directly by the parent companies; and between the title insurance industry in general as opposed to other industries (such as collection agencies and credit bureaus) which make their livelihood by the use of similar records but which are not subject to similar *ad valorem* personal property taxes. In light of the disposition above, we need not reach the merits of these arguments.

The judgment in Case No. 12244 holding that Ada County was not empowered to levy an *ad valorem* personal property tax on First American's title plant is affirmed. The judgment in Case No. 12670 upholding the right of Cassia County to levy a similar tax on Land Title & Escrow, Inc., is reversed.

Costs to respondent in No. 12244.

Costs to appellant in No. 12670.

SHEPARD, C. J., and McFADDEN, DONALDSON and BAKES, JJ., concur.

---

**3.** The counties argue that if *ad valorem* personal property taxes are held to be "similar" to those expressly pre-empted in I.C. § 41–405(2), then there is no reason why a county tax on the title company's real property would not also be barred. As explained in the text, the simple reason for distinguishing between the two is that the company's real property, if any, plays no such unique role in the state regulatory framework.