650 P.2d 677

SHERWOOD & ROBERTS, INC., a
Washington corporation,
Plaintiff-Respondent,

v.

Robert A. RIPLINGER and Kathy
Riplinger, husband and wife,
Defendants-Appellants.

No. 13412.

Supreme Court of Idaho.

Sept. 8, 1982.

Richard P. Wallace, Coeur d'Alene, for defendants-appellants.

Dale G. Higer and Thomas R. Linville, of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for plaintiff-respondent.

BAKES, Chief Justice.

This is an appeal from the district court's denial of a motion to set aside a default judgment. The appellant, Robert Riplinger,[1] was employed by respondent Sherwood & Roberts, Inc., from February, 1969, to February, 1970, as a loan officer. In February, 1970, the respondent accused Riplinger of misappropriating funds. Rather than face criminal prosecution, Riplinger and his wife, Kathy, signed a "Memorandum of Agreement" on April 1, 1970, admitting among other things that "funds of Sherwood & Roberts were diverted to the bank account of Robert and Kathy Riplinger for their personal use ...," and agreeing to repay the amount of the loss to Sherwood & Roberts. On May 1, 1970, the appellant and his wife signed a promissory note in favor of Sherwood & Roberts for $20,000 pursuant to the "Memorandum of Agreement."

The Riplingers made payments on the note through January, 1976, and then ceased making further payments. In September, 1976, Sherwood & Roberts filed a complaint against the Riplingers to collect on the balance of the note. On October 7, 1976, Robert Thompson filed a notice of appearance as counsel for Riplingers. Thereafter, an answer and counterclaim were filed. On October 20, 1978, Thompson filed a motion for leave to withdraw as attorney for the appellant.[2] On October 27, 1978, in accordance with I.R.C.P. 11(b)(3)[3]

---

1. Defendant Kathy Riplinger is not involved in this appeal.

2. Kathy Riplinger had previously obtained separate counsel.

3. "RULE 11(b)(3). LEAVE TO WITHDRAW—NOTICE TO CLIENT.—If an attorney is grant-ed leave to withdraw, the court shall enter an order permitting the attorney to withdraw and directing his client to appoint another attorney to appear, or to appear in person by filing a. written notice with the court stating how he will represent himself, within 20 days from the date of order. After the order is entered, the

the court granted the motion to withdraw by entering the following order:

"NOW THEREFORE, IT IS HEREBY ORDERED that ROBERT H. THOMPSON is granted leave to withdraw as attorney for the defendant(s) and shall send by certified mail a copy of this order directing the defendant(s) to appoint another attorney to appear, or to appear in person by filing a written notice with the court stating how they will represent themselves within twenty (20) days from the date of this order. Such failure to appear in the action within twenty (20) days shall be sufficient grounds for entry of default against the defendant(s) without further notice to the defendant(s)."[4]

Two affidavits of personal service of the order permitting withdrawal of attorney appear in the record. Both were served on November 8 by the same process server at different addresses. The appellant admitted receiving a copy of the order, and he telephoned the court clerk on November 13, 1978. Riplinger maintains that he told the court clerk that he intended to defend the action, and if nothing else that he would represent himself. A note made by the clerk of that conversation was read by the trial court as follows:

"Mr. Bob Riplinger called this date advising that he has received notice from Robert Thompson that he has withdrawn from representing Mr. Riplinger. He advised that he did not receive this notice until the time for him to make an appearance or file written notice had expired. I advised Mr. Riplinger that he should decide as soon as possible how he intends to proceed and then notify the court of his intentions as soon as possible."[5]

Riplinger took no further action, and pursuant to Sherwood & Robert's request, the court entered an order of default and a judgment against Riplinger on the basis that he had "failed to file notice stating how said defendant shall represent himself ...." Subsequently, respondent settled with Kathy Riplinger, and the action against her was dismissed by stipulation. Riplinger's first notice of the default judgment against him appears to have been when a writ of execution was served on his employer on April 20, 1979. He then contacted his present attorney who filed a motion to set aside the entry of the default and default judgment on May 16, 1979. After a hearing, the court denied that motion, and that denial is the subject of this appeal.

I

The appellant argues initially that having once appeared in the action, judgment should not have been rendered against him without first providing him with "written notice of the application for judgment at least three days prior to the hearing on such application," as required under I.R.C.P. 55(b)(2). In *Radioear Corp. v. Crouse*, 97 Idaho 501, 547 P.2d 546 (1976), this Court was faced with a similar question with regard to the application of I.C. § 3–206, since repealed and replaced with I.R.C.P. 11(b)(3), both of which address the provision of notice concerning counsel's withdrawal.

---

withdrawing attorney shall forthwith, with due diligence, serve copies of the same upon his client and all other parties to the action. In the event the withdrawing attorney is unable to make personal service of such notice upon his client, as shown by the attorney's affidavit, he may make such service by certified mail to the last known address most likely to give notice to his client, which service shall be complete upon mailing. Upon the entry of an order granting leave to an attorney to withdraw from an action, no further proceedings can be had in that action which will affect the rights of the party of the withdrawing attorney for a period of 20 days, but if such party fails to appear in the action either in person or through a newly appointed attorney within such 20 day period, such failure shall be sufficient ground for entry of default against such party or dismissal of the action of such party, with prejudice, without further notice, which shall be stated in the order of the court."

4. The plural references in the order are due to the court's use of a form order in granting the withdrawal.

5. Riplinger was confused about the time period involved. He did receive the notice before the twenty day time period expired on November 16, 1978.

As then applicable to the *Radioear* decision, I.C. § 3–206 stated the following:

> "3–206. NOTICE TO APPOINT ANOTHER ATTORNEY.—When one party's attorney dies, is removed, suspended, or ceases to act as such, the adverse party must, before any further proceedings can be had by written notice, require such party to appoint another attorney or to appear in person. Notice of compliance must thereafter and within twenty days be given to the party requesting appointment. *Failure to give such notice within the time specified shall be sufficient to justify default entry or dismissal of action."* (Emphasis added.)

In that case the defendant Crouse was served with a notice to appear or appoint new counsel, and was then defaulted without further notice when he failed to appear or appoint new counsel. In that case, we held that the three day notice under I.R.C.P. 55(b)(2) was required, and that the default judgment entered without that notice was voidable. 97 Idaho at 503–4, 547 P.2d 548–9.

However, I.R.C.P. 11(b)(3), which is applicable to the case at bar, is different in several respects from its predecessor, I.C. § 3–206. Of particular importance here is that I.R.C.P. 11(b)(3) provides that following service of the prescribed notice, failure of a party "to appear in the action either in person or through a newly appointed attorney within [the required] 20 day period, . . . shall be sufficient ground for entry of default against such party or dismissal of the action of such party, with prejudice, *without further notice,* which shall be stated in the order." (Emphasis added.) Thus, I.R. C.P. 11(b)(3), unlike I.C. § 3–206, clearly permits the entry of default [6] without further notice, as long as the notice so states. *Cf. Omega Alpha House Corp. v. Molander Assoc.,* 102 Idaho 361, 630 P.2d 153 (1981) (where answer had been filed by withdrawing counsel, but where notice did not state that default could be entered without further notice). Any conflict between I.R.C.P. 11(b)(3) and 55(b)(2) in this matter must be resolved in favor of Rule 11(b)(3), since it is both the more specific and the more recent [7] rule. *Mickelsen v. City of Rexburg,* 101 Idaho 305, 612 P.2d 542 (1980).

Additionally, in regard to the question of notice, it is urged that I.R.C.P. 11(b)(3) violates the appellant's right to due process under the fourteenth amendment in that it permits the entry of a default judgment without prior notice to him. However, I.R. C.P. 11(b)(3) itself clearly requires that notice be sent to the client of the withdrawing attorney, stating that failure to appear within twenty days will "be sufficient ground for entry of default against such party . . . with prejudice . . . without further notice." Such notice unambiguously apprises the party of the consequences of failing to appear, and thus satisfies his right to prior notice. If the notice were not received or were materially defective, then appellant would have good cause to have the default judgment set aside. *Cf. Omega Alpha House Corp. v. Molander Assoc., supra.* However, in this case the notice fully conformed with the requirements of I.R. C.P. 11(b)(3), and the defendant admitted that he timely received that notice.

---

6. In the context of this particular rule, reference to entry of "default" includes entry of "default judgment." The fact that I.R.C.P. 11(b)(3) explicitly states that no further notice is necessary, clearly indicates that "default" in the context of I.R.C.P. 11(b)(3) includes "default judgment," since the entry of a default alone, under I.R.C.P. 55(a)(1), requires no notice. The explicit provision in I.R.C.P. 11(b)(3) that no further notice is necessary would be superfluous if the rule was intended to apply only to entry of "default," and not to entry of "default judgment." Statutes and rules must be construed as a whole, without separating one provision from another, *First American Title Co. of Idaho, Inc. v. Clark,* 99 Idaho 10, 12, 576 P.2d 581, 583 (1978), and they should not be construed so as to make mere surplusage of any of the provisions included therein. *Pettis ex rel. United States v. Morrison Knudson Co.,* 577 F.2d 668, 673 (9th Cir. 1978). In addition, Rule 11(b)(3) indicates that default may be entered "with prejudice." Thus, construing the rule as a whole, reference to "default" clearly includes "default judgment."

7. I.R.C.P. 11(b)(3) was first adopted in 1975, while I.R.C.P. 55(b)(2) was adopted in 1958.

## II

■ The appellant also argues that his verbal contact with the clerk of the court was sufficient to constitute an appearance. However, the order unambiguously required a *written* notice of how the appellant intended to represent himself. In *Cuoio v. Koseris,* 68 Idaho 483, 200 P.2d 359 (1948), a judge, by telephone, orally extended the time limit for filing an answer for "a few days." Nevertheless, three days before the answer was filed, a default was entered. The district court later set the default aside on the basis of the oral extension. However, on appeal, this Court reversed the setting aside of the default, holding that the oral communication by the judge "was not a recognizable order effective to grant further time." 68 Idaho at 485, 200 P.2d at 360. If a specific oral extension of time by a judge was insufficient in *Cuoio* to alter the procedural requirements imposed by law upon the defendant in that case, then certainly in this case the defendant's telephonic communication with a clerk of the court, in which the clerk did nothing more than advise the defendant that "he should decide as soon as possible how he intend[ed] to proceed and then notify the court," is insufficient to relieve the defendant of the requirement of filing a *written* notice as set forth in both I.R.C.P. 11(b)(3) and the order of the court. Thus, we hold that the defendant's oral communication with the clerk of the court did not constitute an appearance.

## III

It is next contended that the due process clause of the fourteenth amendment prohibits the entry of a default judgment against a party who has timely appeared and filed responsive pleadings. The appellant relies in particular upon *Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897). In *Hovey,* the defendants who had already ap-

peared and answered in the action were ordered by the court to deposit into the court registry certain sums which were the subject of the suit. The defendants failed to obey the order and the plaintiffs moved the court to punish the defendants for disobedience of the order. Thereafter, the court ordered that the defendants' answer "be stricken out and removed from the files of the court, and that this cause do proceed as if no answer herein had been interposed." 167 U.S. at 412, 17 S.Ct. at 842. Then, judgment was entered against the defendants *pro confesso.* The United States Supreme Court, in reviewing the judgment, held that the judgment was invalid. The Court stated that "[t]he right which was here denied by rejecting the answer and taking the bill for confessed, because of the contempt, involved an essential element of due process of law," and that "the [court below] did not possess the power to disregard an answer which was in all respects sufficient." 167 U.S. at 444, 17 S.Ct. at 854.

Subsequently, in *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1908), the Supreme Court "substantially modified"[8] its holding in *Hovey* to permit the sanction of default for a party's failure to comply with discovery orders.[9] In so doing, the court stated the following:

"*Hovey v. Elliott* involved a denial of all right to defend as a mere punishment. This case presents a failure by the defendant to produce what we must assume was material evidence in its possession, and a resulting striking out of an answer and a default. The proceeding here taken may therefore find its sanction in the undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer to be gotten from the suppression or failure to

---

**8.** Those words were used by the Supreme Court in *Societe Internationale pour Participations Industrielles et Commerciales v. Rogers,* 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958), to describe the effect of *Hammond* upon *Hovey.*

**9.** Of course, there are limits on the use of default as a sanction in such situations. *See Societe Internationale pour Participations Industrielles et Commerciales v. Rogers, supra; Sierra Life Ins. Co. v. Magic Valley Newspapers,* 101 Idaho 795, 623 P.2d 103 (1981).

produce the proof ordered, when such proof concerned the rightful decision of the cause." 212 U.S. at 350–51, 29 S.Ct. at 379–380.

The court in *Hammond* also recognized that the ability of a court to default a defendant for failure to appear or file an answer rested as well on the court's power to create a presumption that, by failing to appear or plead, the defendant admits the material facts of the complaint. 212 U.S. at 351, 29 S.Ct. at 380.

 In comparing *Hovey* with *Hammond*, it appears that the reason the sanction in *Hovey* was determined to be "mere punishment" was because the objective of the underlying order in *Hovey* required an act which was ancillary to obtaining an adjudication of the merits. The paying in of moneys to the court registry was not an essential step in determining the validity of Hovey's claim, and it had no bearing on the merits of the defendant's defense. In contrast, a defendant's appearance, answer, and compliance with discovery requests are all central to the adjudicative process, and concern "the rightful decision of the cause." *Id.* The courts have inherent power to establish reasonable rules to manage their own affairs and achieve the orderly and expeditious disposition of cases. *Link v. Wabash RR. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962). Thus, when defendants fail to proceed with their defense in accordance with those rules, the courts are justified in creating such presumptions as addressed in *Hammond.*

 In the present case, the defendant failed to file a written notice of appearance or the appointment of new counsel within the prescribed time limit. This failure to comply with I.R.C.P. 11(b)(3) justifies a presumption that he abandoned his defense. In *Rio Grande Irr. & Colonization Co. v.*

*Gildersleeve,* 174 U.S. 603, 19 S.Ct. 761, 43 L.Ed. 1103 (1899), decided two years after *Hovey,* the United States Supreme Court held that a defendant could be defaulted for failure to appear where his counsel, having already appeared once in his behalf, withdrew his appearance without leave of court.[10] The court in *Rio Grande* also gave approving citation to *Sloan v. Wittbank,* 12 Ind. 444 (1859), in which it was held that the withdrawal of the defendant's appearance carries with it the answer, thus entitling the defendant to judgment by default. 174 U.S. at 607, 19 S.Ct. at 762. The suggestion is thus clear that the result would have been the same in *Rio Grande* had the defendant already filed an answer prior to the attorney's withdrawal, since under the rationale of *Rio Grande* the withdrawal of the attorney carried with it all incidents of the defendant's appearance.[11] Although *Hovey* was not addressed in *Rio Grande,* and the presumption analysis in *Hammond* had not yet been set forth, still it is clear that the Supreme Court saw no impediment to defaulting the defendant in *Rio Grande* for failure to *renew* his appearance following the withdrawal of counsel.

 The presumption of abandonment raised by a defendant's failure to proceed in an action in accordance with court rules may be rebutted by any reasonable showing of *inability* to comply with those rules. *Societe Internationale pour Participations Industrielles et Commerciales v. Rogers,* 357 U.S. 197, 210, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958). However, in this case the defendant made no showing of *inability* to comply with I.R.C.P. 11(b)(3). Thus, it was within the district court's power to enter a default judgment against the defendant for failure to proceed in accordance with I.R. C.P. 11(b)(3).

---

10. That default would have been proper had the court approved the withdrawal seems to have been assumed, *see Creighton v. Kerr,* 87 U.S. (20 Wall.) 8, 22 L.Ed. 309 (1874). The concern in *Rio Grande* was whether the appearance of the defendant could be considered as withdrawn, thereby subjecting the defendant to default, where the attorney withdrew without leave to do so.

11. Certainly, however, in Idaho all of a defendant's pleadings remain viable under I.R.C.P. 11(b)(3) if a new appearance is actually made.

The right to grant or deny relief under I.R.C.P. 60(b) is a discretionary one. Thus, absent a showing of arbitrary disregard for the relevant facts and principles of law by the court below, this Court will affirm the lower court's decision to deny or grant relief under I.R.C.P. 60(b). *Johnston v. Pascoe,* 100 Idaho 414, 419, 599 P.2d 985, 990 (1979); *Lisher v. Krasselt,* 96 Idaho 854, 857, 538 P.2d 783, 786 (1975). We see no such arbitrary disregard in the present case, and therefore affirm the order denying relief.

## IV

Respondent requests an award of attorney fees. In signing the promissory note, Riplinger agreed that in case a suit or action to collect the note was instituted he would "pay such sum as the court may adjudge reasonable as attorney fees in such suit or action." Attorney fees are therefore allowed pursuant to the agreement. I.C. § 3–205.

The order of the district court is affirmed. Costs and attorney fees to respondent.

DONALDSON and SHEPARD, JJ., concur.

McFADDEN, Justice, dissenting.

There is a rule of statutory construction followed in this state, that where earlier and later acts are not necessarily in conflict and may be reconciled by reasonable construction, enactment of a later act will not result in repeal of an earlier act. This is because repeals by implication are not favored. *Ada County v. State,* 93 Idaho 830, 475 P.2d 367 (1970); *State v. Roderick,* 85 Idaho 80, 375 P.2d 1005 (1962). The majority ignores this rule and instead resolves the matter in favor of I.R.C.P. 11(b)(3) "since it is the more specific and the more recent rule." The conclusion of the majority is incorrect for two reasons. The first reason is that I.R.C.P. 55(b)(2) is the more recent rule, not I.R.C.P. 11(b)(3). While it is true that I.R.C.P. 55(b)(2) was originally enacted in 1958 it was amended in 1976. In amending the rule the court recognized the validity of the rule, as written, as late as 1976, after the enactment of I.R.C.P. 11(b)(3).

The second reason that the majority's conclusion is incorrect is that there is no conflict between I.R.C.P. 11(b)(3) and 55(b)(2), so as to apply the doctrine of "repeal by implication." These two rules can be construed to give viability to both. Under I.R.C.P. 11(b)(3), when an attorney is permitted to withdraw his representation of his client, he is obligated to serve his client with copies of the court order allowing the withdrawal, which order shall state that if the client "fails to appear within . . . [a] 20 day period, such failure shall be sufficient ground for entry of default against such party or dismissal of the action of such party, with prejudice, without further notice . . . ." Under I.R.C.P. 55(b)(2), when a party has appeared in an action, as appellant did in this case through his attorney, he "shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application." There is a two step proceeding to obtain a default judgment. The first step is the entry of default. It is to this step of the proceeding that I.R.C.P. 11(b)(3) applies. That rule provides that *default* may be entered without further notice, it does not provide that *judgment* may be entered without further notice. Once the default is entered the second step is the entry of default judgment. It is to this step that I.R.C.P. 55(b)(2) applies. That rule requires notice to appellant that judgment will be entered against him.

Therefore, even if default may be entered under I.R.C.P. 11(b)(3) the party is still entitled to an additional three days notice by reason of the fact that he has previously appeared in the action. This conclusion comes from construing the rules together instead of in conflict with each other and is also in keeping with the policy of this court that default judgments are not favored. *Garren v. Saccomanno,* 86 Idaho 268, 385 P.2d 396 (1963); *Orange Transportation Co. v. Taylor,* 71 Idaho 275, 230 P.2d 689 (1951); *Mead v. Citizen's Automobile Inter-Ins. Exch.,* 78 Idaho 63, 297 P.2d 1042 (1956).

(Submitted by McFADDEN, J., prior to his retirement on August 31, 1982.)

BISTLINE, Justice, dissenting.

PREFACE

When it befell my lot to write the Court's unanimous opinion in *Sierra Life Insurance Co. v. Magic Valley Newspapers, Inc.*, 101 Idaho 795, 623 P.2d 103 (1980), I labored under the premise that the Court was firmly of the belief that entry of a default judgment as a punishment for failure to comply with a direct order of the trial court compelling revelation of sources was improper. Now, two years later, upon observing the Court's gross misapplication of its own rules, with little regard for the underlying facts, and no regard for *Sierra Life*, I am brought to wonder how I would have voted in *Sierra Life* if that case had followed today's case in point of time—rather than preceding it. Surely the two cases cannot stand together in the same reporter system. If the losers in *Sierra Life* are outraged at seeing the disparity in the Court's philosophical meanderings, they may not be without justification. In *Jensen v. Doherty*, 101 Idaho 910, 623 P.2d 1287 (1981), which followed shortly after *Sierra,* there was some forewarning that the Court would apply its own rules on an ad hoc basis and as it saw fit, but at least the issue in that case was more difficult to comprehend, and perhaps my effort was inadequate to forestall the Court's movement in the wrong direction.

On the positive side, the Court's opinion today, compared to its summary disposition in *Jensen,* is a monumental effort, and goes to extremes in explaining to Mr. Riplinger why he doesn't deserve a day in court and why a $20,000 judgment against him will stand because he failed to provide a written statement to the effect that when his case—at issue and ready for trial—came up for trial, he would represent himself if he could not afford or otherwise was unable to obtain an attorney who would speak for him. In days gone by, the default judgment involved in this case would have been set aside out-of-hand:

"In addressing the effect of noncompliance with procedural statutes and rules, the Court in *Stoner v. Turner,* 73 Idaho 117, 121, 247 P.2d 469, 471 (1952), said:
'*The object of statutes and rules regulating procedure in the courts is to promote the administration of justice.* Those statutes and rules which fix the time within which procedural rights are to be asserted are intended to expedite the disposition of causes to the end that justice will not be denied by inexcusable and unnecessary delay. But, except as to those which are mandatory or jurisdictional, *procedural regulations should not be so applied as to defeat their primary purpose, that is, the disposition of causes upon their substantial merits without delay or prejudice.*' "
*Bunn v. Bunn,* 99 Idaho 710, 711, 587 P.2d 1245, 1246 (1978). (Emphasis added.)

A lay litigant's failure to give a written statement of his intentions, after having done so verbally, does not in any way delay or prejudice the disposition of a cause which is at issue and ready for trial. *Cf. Dustin v. Beckstrand,* 103 Idaho 780, 654 P.2d 368 (1982) (defendants appeared *pro se,* remained *pro se,* and despite their non-attendance at trial, were awarded a reversal of the judgment against them. Note the dissenting opinion of Bakes, C. J., which advocated setting aside the judgment of liability as well, notwithstanding that the defendants failed to furnish the trial court with an address).

I.

I concur with Justice McFadden that I.R. C.P. 55(b)(2) was applicable to the entry of the default judgment in this case and that the judgment is voidable because of the failure to give notice to Riplinger as required by that rule. My deeper concern, however, is the Court's sanctioning of a clearly unconstitutional rule that allows a default judgment to be entered *without notice* against a party who has already appeared in a case. That rule is I.R.C.P. 11(b)(3).

## II.

On October 20, 1978, Riplinger's attorney, Robert Thompson, filed a motion for leave to withdraw, stating "that repeated efforts to contact the defendant(s) have not been productive and the attorney-client relationship cannot continue." Thompson also filed an affidavit for service by certified mail, stating that he had not been able to contact Riplinger and that Riplinger's last known address was "Rt. 3 Box 710B, Post Falls, Kathy Riplinger—c/o Kenneth Jacobsen, 118 N. 7th St., CDA." On October 27, 1978, the court entered the following order granting withdrawal: [1]

"Upon hearing ROBERT H. THOMPSON'S, motion for leave to withdraw on this 27th day of October, 1978, and based upon his affidavit for service by certified mail, and upon the affidavit of service of the notice of hearing and motion for leave to withdraw,

"NOW THEREFORE, IT IS HEREBY ORDERED that ROBERT H. THOMPSON is granted leave to withdraw as attorney for the defendant(s) and shall send by certified mail a copy of this order directing the Defendant(s) to appoint another attorney to appear, or to appear in person by filing a written notice with the court stating how they will represent themselves within twenty (20) days from the date of this order. Such failure to appear in the action within twenty (20) days shall be sufficient grounds for entry of default against the defendant(s) without further notice to the defendant(s)."

Two affidavits of personal service of the order permitting withdrawal of attorney, one served at Rt. 3, Box 710B, Post Falls, Idaho, and one served at 315 West Garden, Coeur d'Alene, Idaho, appear in the record. Both were served on November 8th by the same process server. Riplinger telephoned the court clerk on November 13, 1978, about this order. Riplinger maintains that he told the clerk that he intended to defend the action, and if nothing else that he would represent himself. A note made by the clerk of that conversation was read by the trial court as follows:

"Mr. Bob Riplinger called this date advising that he has received notice from Robert Thompson that he has withdrawn from representing Mr. Riplinger. He advised that he did not receive this notice until the time for him to make an appearance or file written notice has expired.[2] I advised Mr. Riplinger that he should decide as soon as possible how he intends to proceed and then notify the court of his intentions as soon as possible."

Riplinger took no further action, and on December 14, 1978, Sherwood filed an affidavit of failure to plead or otherwise defend in support of its application for entry of default [3] as well as other supporting affi-

---

1. It must be noted that this is an *order granting withdrawal. It is not a separate court order to Riplinger* ordering him to state to the court how he will represent himself. Riplinger was not directly ordered to do anything by this order unless it be now the law that one attorney can order another attorney to do anything. The proposition is absurd. At best, one attorney may advise another as to what he thinks ought to be done. One cannot violate an order when one has not been ordered.

2. Riplinger was confused about the time period involved. He did receive the notice before the twenty day time period had expired.

3. That affidavit read as follows:

"DALE G. HIGER, being first duly sworn, on oath, deposes and says:

"That he is one of the attorneys for the Plaintiff above-named, and has personal knowledge of the facts set forth in this affidavit.

"That on the 22nd day of October, 1978, the Court herein filed in this cause an Order Granting Withdrawal.

"That examination of the Court files and records in this cause shows that the Defendant herein was served by certified mail with a copy of the Order on the 31st day of October, 1978.

"That more than twenty (20) days have elapsed since the date on which the Defendant herein was served with the Order, excluding the date of service.

"That this affidavit is executed by Affiant herein in accordance with Rule 55(a) of the Idaho Rules of Civil Procedure, for the purposes of enabling the Plaintiff herein to obtain *the entry of default against the Defendant herein for failure to answer or otherwise defend* as to the Court's Order." (Emphasis added.)

The last paragraph of this affidavit was a misconception. The default could not be sought

davits. No notice of this action was sent to Riplinger, and on December 15, 1978, the district court entered an order of default and a judgment[4] for Sherwood for $11,425 principal, $2,704.43 interest, $545.65 costs and $4,000 attorney's fees. In pertinent part, that judgment stated that the default was being entered because Riplinger had "failed to file notice stating how said Defendant shall represent himself . . . ." The default was not entered on the grounds that Riplinger had failed to file a pleading or appear in court. The judgment on the default, however, was entered on a recital that he had failed to state how he would represent himself. In effect, Riplinger, who was already in court[5] with an answer to the complaint and his own counterclaim, was rather cavalierly brushed aside and denied his day in court—notwithstanding that it has historically been a man's right to be his own attorney, and when his attorney withdraws he is not *ipso facto* relegated to an out-of-court status—from which he must

scratch his way back in. The court also dismissed with prejudice Riplinger's counterclaim. The clerk then mailed an abstract of this judgment to Riplinger at Rt. 3, Box 710B, Post Falls, Idaho. Riplinger denies ever receiving a copy of this judgment.

A writ of execution was served on Riplinger's employer on April 20, 1979; Riplinger asserts that this was his first knowledge of the default judgment that had been entered against him. He was then able to retain his present attorney who with reasonable alacrity moved to set aside the entry of default and default judgment. In the affidavit in support of this motion Riplinger stated that during the period of time involved in this lawsuit he had been undergoing a traumatic period of marital problems, including a separation and divorce from Kathy Riplinger, followed by a marriage to his second wife, another separation, and another divorce. Riplinger also stated that he had never resided at Rt. 3,

---

4. for failure to answer or defend, but simply for failure to state how he would be thereafter represented—whether by new counsel, or *pro se* (assuming the validity and applicability of the court's unusual rule). Riplinger, having appeared and pleaded was engaged in defending. Moreover, the order had not directed him to do anything.

4. That judgment provided as follows:
 "The Defendant, ROBERT A. RIPLINGER, having been regularly served with summons and complaint, personally in the State of Idaho, and having *failed to file notice stating how said Defendant shall represent himself*, the legal time for pleading or otherwise filing said notice having expired, and the Plaintiff having shown by its affidavit of non-military service that the Defendant is not a member of the military forces of the United States of America on active duty, nor an infant, nor incompetent, and the default of the said Defendant having been duly entered herein according to law; upon the application of said Plaintiff, supported by the affidavit of failure to plead or otherwise defend in support of application for entry of default and the affidavit of amount due.
 "WHEREFORE, by virtue of the law and by reason of the premises aforesaid,
 "IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Plaintiff, SHERWOOD & ROBERTS, INC., have and recover

on its complaint herein from the Defendant, ROBERT A. RIPLINGER, the sum of $11,-425.00, together with interest thereon in the sum of $2,704.43, together with costs and disbursements incurred herein in the sum of $545.65, together with attorneys' fees incurred herein in the sum of $4,000.00, being a total of $18,675.08.
 "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the counterclaim of Defendant, ROBERT A. RIPLINGER, against the Plaintiff be dismissed with prejudice." (Emphasis added.)

5. It should be noted here that the vast majority of litigants go to small claims court, where they cannot have an attorney. Here Riplinger was already in court, and there is no requirement that he have an attorney. Riplinger's only fault, then, if such it be, was in not submitting to the court a *written* statement as to whether he was going to obtain another attorney or proceed *pro se*—of which he had actually notified the office of the clerk. The oral advice from the clerk of the court was sound—that as soon as Riplinger was able to obtain new counsel, which is not always a sure bet, he should give notice to that effect. In practicality, the rule may seem a bit on the stupid side, as it would be by matter of practice and custom incumbent upon newly retained counsel to both file an appearance and notify opposing counsel.

Box 710B, Post Falls, Idaho,[6] and that he had changed his address three times during 1978. Riplinger further stated that "[a]t no time did [he] understand that he would have to get back to the Court in writing on this matter, but rather understood that the Court would be contacting him as regards a trial date, or whatever, and let him know what should be done next in this matter." Riplinger concluded his affidavit as follows:

"As soon as the affiant realized that there was a default judgment he contacted ... [his present] attorney, to do whatever he could to move to set aside the default judgment. The affiant did not feel that the length of time between Mr. Thompson's withdrawal and the Writ of Execution was unreasonable without any activity in this matter, as this matter, begun in the Fall of 1976, had had long periods of inactivity. At no time did the affiant understand that he had to file something in writing with the Court, other than his contacting the Court by telephone, and indicating that he would represent himself if necessary. Affiant did not obtain the services of a second attorney in this matter in that he did not have the funds to do so. Affiant has had no previous experience with Court litigation, and assumed that this matter could not go to judgment against him without first going to Court for a trial on the matter. Affiant feels that he has a meritorious defense as stated in his counterclaim in this matter, and does wish the Court to allow him an opportunity to present that defense by allowing him to have his day in Court."

After hearing oral argument, the trial court denied the motion to set aside the entry of default and default judgment. The court in its comments from the bench explained why it was denying the motion:

"... I am fully aware of the basic concept ... that it is better that litigation be decided and litigated on its merits ... rather than by default and that it is a very fair and just rule which we should

try to apply. By the same token ... there has got to be some order of finality that matters as they come along cannot be continually time and again reopened upon some excuse or the other.

"I think that is the fundamental purpose then behind Rule 60(b) that says reopening of these matters must be predicated upon a showing of some excusable mistake, inadvertence or excusable neglect. *The only mistake that I can see here is that Mr. Riplinger just plain didn't read or understand the very plain language of the order that he admits receiving.* He didn't act upon it. The same would be said for inadvertence. There has been no showing in the court's opinion of any excusable neglect. In fact the record of that shows that he did receive it, he did act on it at least partially or initially but didn't follow up as required action.

"So, I must, I am afraid conclude that there just hasn't been the necessary showing of mistake, inadvertence or excusable neglect under Rule 60(b) that would justify the setting aside of this default. Of course it has been pointed out and it can be noted here that there may be some prejudice resulting to the Plaintiff. If forced to go to trial now they would be in the posture of two co-makers on a note, one having been released and not before the jury and it might put the Plaintiff in the precarious position were that posture before the jury that the jurors might have the feeling that Plaintiff was excusing the former Mrs. Riplinger and picking on this particular Defendant. And, that feeling could react unfavorably for the Plaintiff in a jury trial.

"So, I think, considering all of these things I will have to deny the motion to set aside default." (Emphasis added.)

While I.R.C.P. 55(b)(2) provides that "[i]f the party against whom judgment by default is sought has appeared in the action,

<hr />

6. Riplinger has filed an affidavit augmenting the record before this Court in which he states that he in fact did reside at Rt. 3, Box 710B, Post Falls, Idaho, in January and February of 1977, and that he provided his attorney with his more recent addresses.

he ... shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application," I.R.C.P. 11(b)(3) provides as follows:[7]

"If an attorney is granted leave to withdraw, the court shall enter an order permitting the attorney to withdraw and directing his client to appoint another attorney to appear, or to appear in person by filing a written notice with the court stating how he will represent himself, within 20 days from the date of order. After the order is entered, the withdrawing attorney shall forthwith, with due diligence, serve copies of the same upon his client and all other parties to the action. In the event the withdrawing attorney is unable to make personal service of such notice upon his client, as shown by the attorney's affidavit, he may make such service by certified mail to the last known address most likely to give notice to his client, which service shall be complete upon mailing. Upon the entry of an order granting leave to an attorney to withdraw from an action, no further proceedings can be had in that action which will affect the rights of the party of the withdrawing attorney for a period of 20 days, but *if such party fails to appear* in the action either in person or through a newly appointed attorney *within such 20 day period, such failure shall be sufficient ground for entry of default*

against such party or dismissal of the action of such party, with prejudice, *without further notice* which shall be stated in the order of the court." (Emphasis added.)

Under the majority's incorrect application of the general rule that a more specific statute controls over a general one, the majority's inappropriate application of I.R.C.P. 11(b)(3) governs the present situation. The fundamental question raised by the majority's reliance on I.R.C.P. 11(b)(3) is whether a strict application of I.R.C.P. 11(b)(3) under the particular facts of this case violates due process.[8]

### III.

At the outset I note that the withdrawal of an attorney does not result in withdrawing the client's appearance or pleadings. *Harris v. Juenger,* 367 Ill. 478, 11 N.E.2d 929 (1937); *Dealers Warehouse Co. v. Wahl & Associates,* 216 N.W.2d 391 (Iowa 1974); *Sawyer v. Sawyer,* 261 Iowa 112, 152 N.W.2d 605 (1967); *Overmyer v. Eliot Realty,* 83 Misc.2d 694, 371 N.Y.S.2d 246, 258 (Sup.Ct.1975); *Tiffin v. Hendricks,* 44 Wash.2d 837, 271 P.2d 683 (1954); Annot. 64 A.L.R.2d 1424, 1434–35, 1443–44; 6 C.J.S. Appearances § 30a; 5 Am.Jur.2d Appearance § 37. This rule is based on the common-sense proposition that an attorney's withdrawal from a case does not affect the merits of his or her client's position and

**7.** A review of the background of I.R.C.P. 11(b)(3) is helpful here. Prior to the adoption of the current provision, I.C. § 3–206 provided "[w]hen one party's attorney dies, is removed, suspended, or ceases to act as such, the adverse party must, before any further proceedings can be had by written notice, require such party to appoint another attorney or to appear in person." This statute put the onus on the party whose attorney had not withdrawn to contact the other party and demand that the other party take some action to replace his attorney. *See generally Application of Paul,* 78 Idaho 370, 304 P.2d 641 (1956); *Bogue Supply Co. v. Davis,* 36 Idaho 249, 210 P. 577 (1922). That rule was subject to criticism for placing an undue burden on opposing counsel and for unfairly and improperly forcing opposing counsel to communicate directly with the opposing party and tell him what he had to do. Nonetheless, even if the party did not make another

appearance, he was still entitled to notice before a default could be entered.

I.R.C.P. 11(b)(3) was adopted to correct this situation, but the drafters unfortunately went to the other extreme and provided that after counsel notifies his client that he has withdrawn, no further notice need be given by anyone. The intermediate position, of course, would be simply to require Rule 55(b)(2) notice of an application for judgment.

**8.** The majority fails to note that other courts have stated that failure to give three day notice of a default hearing to a party who has appeared violates due process. *See, e.g., McClintock v. Serv-Us-Bakers,* 103 Ariz. 72, 436 P.2d 891 (1968); *Phoenix Metals Corp. v. Roth,* 79 Ariz. 106, 284 P.2d 645 (1955); *Adams & McGahey v. Neill,* 58 N.M. 782, 276 P.2d 913 (1954).

that once the litigant has appeared only his own withdrawal can alter the fact that the case is being contested.

Thus I.R.C.P. 11(b)(3) cannot be equated with a withdrawal of appearance by the party such that the order permitting withdrawal and the notice to file again, in essence, take on the status of new summons to which response must be made. A summons is issued if the defendant has not appeared, and its purpose is to hail him into court. In this case Riplinger had amply shown not only his intention to defend the action brought against him, but was prosecuting a substantial counterclaim. In such circumstances, assuming that an order was directed to him, requiring a notice as to how he intended to proceed was more akin to an order of the court that a party answer interrogatories than to the direction of an initial summons. If a full answer and counterclaim have been filed, a deposition has been given and interrogatories have been answered, the entry of judgment by default can be viewed only as a sanction imposed by the court for failure to obey an order of the court. The majority admits as much. The question, then, is whether this sanction, which denied Riplinger his day in court and which was imposed without notice or hearing, violates due process.[9]

In *Sierra Life Insurance Co. v. Magic Valley Newspapers, Inc.,* 101 Idaho 795, 623 P.2d 103 (1980), this Court noted that "there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Id.* at 799, 623 P.2d at 107 (quoting *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)). In *Sierra* this Court held that the trial court erred in striking defendant's pleadings and entering a default judgment because the sanctions were overly harsh and in the nature of punishment rather than being justi-

fied in order to allow Sierra to develop its case. *Id.* 101 Idaho at 800, 623 P.2d at 108.

While it is unquestioned that a court has the power to dismiss lawsuits and default defendants in order to control its own processes, *see, e.g., Link v. Wabash RR,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (long delays culminating in missing pretrial conference justify dismissal without notice or hearing); *Shapiro, Bernstein & Co. v. Continental Record Co.,* 386 F.2d 426 (2d Cir. 1967) (one year refusal to obtain counsel in cavalier disregard of court's order justified default), such power is not unlimited. *See, e.g., Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897); *Sierra Life Insurance Co. v. Magic Valley Newspapers, supra.* The question before us now is whether entering a default judgment against Riplinger in the present case, without notice, and when there had been no evidence of an intent to delay the lawsuit by Riplinger, constituted imposition of an impermissible sanction in violation of due process.

In *Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897), the defendants refused to obey an order of the court directing them to pay a sum of money into the court registry. The trial court held them in contempt, struck their answer, and entered a default for plaintiff. The United States Supreme Court held "[i]t is therefore clear that the supreme court of the District of Columbia did not possess the power to disregard an answer which was in all respects sufficient, and had been regularly filed, and to ignore the proof taken in its support . . . ," and that a judgment based on such an assumed power is void for want of jurisdiction. *Id.* at 444, 17 S.Ct. at 854. In so holding the Court stated:

"[T]he fundamental conception of a court of justice is condemnation only after hearing. To say that courts have inherent power to deny all right to defend an action, and to render decrees without any

---

**9.** Due process considerations are involved both in the propriety of sanctions and in the requirement of proper notice and hearing before imposition of sanctions. The present case involves the interrelated question of the propriety of a sanction itself *and* the propriety of entering that sanction without notice and hearing.

hearing whatever, is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the exercise of judicial power necessarily depends." *Id.* at 414, 17 S.Ct. at 843.

In *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1908), the Court upheld a trial court order striking an answer and entering a default for refusal to comply with a court order to produce the books and papers of the company and the requested witnesses. The Court, noting that the mere fact the trial court had acted under statutory authority did not take the case out of the *Hovey v. Elliott* rule, distinguished *Hovey* as follows:

"The fundamental guaranty of due process is absolute, and not merely relative. The inherent want of power in a court to do what was done in *Hovey v. Elliott* was in that case deduced from no especial infirmity of the judicial power to reach the result, but upon the broad conception that such power could not be called into play by any department of the government without transgressing the constitutional safeguard as to due process .... *Hovey v. Elliott* involved a denial of all right to defend as a mere punishment. This case presents a failure by the defendant to produce what we must assume was material evidence in its possession, and a resulting striking out of an answer and a default. The proceeding here taken may therefore find its sanction in the undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer to be gotten from the suppression or failure to produce the proof ordered, when such proof concerned the rightful decision of the cause. In a sense, of course, the striking out of the answer and default was a punishment, but it was only remotely so, as the generating source of the power was the right to create a presumption flowing from the failure to produce. The difference between mere punishment, as illustrated in *Hovey v. Elliott,* and the power exerted in this, is as fol-

lows: In the former, due process of law was denied by the refusal to hear. In this, the preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense. The want of power in the one case and its existence in the other are essential to due process, to preserve in the one and to apply and enforce in the other." *Id.* at 351–52, 29 S.Ct. at 380–381.

This distinction was approved in *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). In that case the Court held that dismissal of petitioner's complaint was improper in that its noncompliance with a pretrial production order was due to inability, and not to willfulness, bad faith or any fault of petitioner. The court noted that the presumption created in *Hammond* might well falter where the plaintiff, despite good-faith efforts, was unable to comply with a pretrial production order.

Furthermore, the sanctions imposed must be justified in order to enable the opposing party to develop his case, *Sierra Life Insurance Co. v. Magic Valley Newspapers, Inc., supra, i.e.,* the sanction must further the legitimate end of advancing the lawsuit rather than being a mere punishment. As stated in *Fields v. Stauffer Publications, Inc.,* 2 Kan.App.2d 323, 578 P.2d 1138 (1978), "[t]he object of a sanction should be to prevent the party against whom sanctions are being imposed from profiting by his own violation." *Id.* at 1143.

In the present case the sanction can only be viewed as a punishment, not intended in any way to advance the adjudicative process, and the presumption of *Hammond* cannot stand. This lawsuit had been underway for over two years before the default was entered, and Riplinger at no time had delayed or impeded the progress of this suit. He had filed his answer and counterclaim, given his deposition, and answered interrog-

atories. The simple failure to file a written notice with the court as to how he would proceed after his attorney withdrew cannot be said to create a presumption of fact as to the bad faith and untruth of his answer. This absolute sanction goes far beyond what is necessary to further the lawsuit. Indeed, this sanction serves more as an absolute benefit to Sherwood than as a justified means of furthering the lawsuit. Accepting Rule 11(b)(3), abomination that it is, and keeping in mind the limited purpose which it was designed to accomplish, a reasonable application would have served its purpose. An *order from the court* directing Riplinger to bring in a paper advising that he would be representing himself unless he could find a new lawyer, would have been appropriate. In any event, Riplinger, having not theretofore been ordered to do anything, was entitled to a notice providing him the opportunity to be heard before entry of default. As an in-court litigant, he was, at a minimum, entitled to the same notice that otherwise would have been given to an attorney engaged in his representation. Certainly, however, the trial court could have accepted that Riplinger was in court, although unrepresented by counsel, and sent out an order setting the case for trial. If Riplinger failed to appear for trial, the trial court could have properly heard the evidence presented by Sherwood and in turn any evidence presented by Kathy Riplinger, and thereupon proceeded to enter such judgment as complied with the facts found and the applicable law. *Tartaglia v. Del Papa,* 48 F.R.D. 292 (E.D.Pa.1969). In fact, the trial court, if it felt any compassion for the unrepresented litigant, could have entered an order to show cause declaring its intention to default and dismiss under the provision of that rule—which would have been and should hereafter be the better practice. These examples of adhering to the rules and other available procedures are not by any means exhaustive, but merely illustrate that the court had other options available which would not have denied Riplinger his day in court merely for failing to respond to an advice which the court somehow manages to see as Riplinger's failure to obey a direct order of the court. It is clear that the trial court erred in disregarding Riplinger's showing, which was in all respects sufficient to comport with the provisions of I.R.C.P. 1 requiring liberal construction of the rules and which have been thought to set the tenor in such manners.

The majority attempts to dispose of *Hovey* and *Societe Internationales* by examining the objectives of the underlying orders which the defaulted parties failed to comply with in those cases. The majority concludes that default judgments may not be entered as a sanction for failure to obey orders on issues ancillary to the adjudication on the merits, but *may* enter a default for failure to obey an order which is "central to the adjudicative process ...." Overcoming an inclination to label this as the pure unsupported sophistry which it is, and assuming that this distinction properly tracks the contours of the due process clause, it is nevertheless apparent that the majority has misapplied the distinction in this case. The order, if order it was, did *not* require Riplinger to *proceed* with the case; it merely instructed him to inform the court as to how he would thereafter be proceeding once the next step in the adjudicative process was initiated. At this point in time there remained nothing to be done except setting the case for trial. A litigant's choice of attorneys is not "central to the adjudicative process;" it is even more ancillary than the payment of funds at issue in *Hovey.* The court in this case struck Riplinger's entire pleadings—and entered judgment against him—because he did not inform the court in the precise rule-dictated legal form [10] as to who his new attorney

10. Riplinger did make a good faith effort to inform the court that he intended to proceed by calling the clerk of the court and so informing the clerk. The fact that he did not file a formal appearance is undoubtedly due to his lack of legal training. The tardiness of the contact may or may not have been the result of failure to understand the time limits involved. Moreover, his prior unrepresented court contacts may have been with other laymen who in small claims court learned that a clerk of the court will in fact aid a plaintiff in filing a complaint,

would be, or whether he would proceed *pro se*. This type of punishment, inflicted without prior notice to Riplinger, is a clear violation of the procedural rights guaranteed to each individual by the United States Constitution.

## IV.

A few final points are necessary regarding the possible prejudice to Sherwood that would result from setting aside the default. First, since the default was entered in violation of due process, any prejudice to Sherwood is irrelevant. Subsequent actions cannot affect the initial unconstitutionality of the default judgment. Second, it was improper for a default judgment to be entered against one of the defendants in this case while the suit was still pending against the other. As stated in 6 Moore's Federal Practice § 55.06 (2d ed. 1976), "[i]f ... the alleged liability is joint a default judgment should not be entered against a defaulting defendant until all of the defendants have defaulted; or if one or more do not default then, as a general proposition, entry of judgment should await an adjudication as to the liability of the nondefaulting defendant(s)." (Footnotes omitted.) As stated in *Frow v. De La Vega*, 15 Wall. 552, 554, 21 L.Ed. 60 (1872):

> "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

> "The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court.... But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all."

In the present case, both Kathy and Robert Riplinger had signed the note, and the lawsuit was identical against each. So long as one defendant remained actively in the case, it was error to enter a default judgment against the other. Any prejudice to Sherwood, a self-manufactured result, therefore should not affect a proper determination.

I dissent.

---

and *learned also that a defendant merely shows up at the appointed time.* The trial court and this Court in turn are far too exacting in their demands of lay persons at loose in a foreign environment.